David H. Ben-Asher, Esq. (DB3242)
RABNER, ALLCORN, BAUMGART & BEN-ASHER, P.C.
2 Upper Montclair Plaza
Montclair, New Jersey 07043          ***ELECTRONICALLY FILED***
(973) 744-4000

Marc A. Susswein, Esq. (MS 9084)
LIDDLE & ROBINSON, L.L.P.
800 Third Avenue
New York, New York 10022
(212) 687-8500

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY

---------------------------------------------------------------------x
                            :

ROBERT WAAS AND ROBERT GERMANO,   :
                            :

               Plaintiffs,       :   Civil Action No. _____

                            :   **COMPLAINT**
        -against-           :

                            :

PRUDENTIAL FINANCIAL, INC.; PRUDENTIAL  :   PLAINTIFFS DEMAND
INVESTMENT MANAGEMENT, INC.; and      :   TRIAL BY JURY
PRUDENTIAL INVESTMENT SERVICES LLC,   :

                            :

             Defendants.      :

---------------------------------------------------------------------x

       Plaintiffs, Robert Waas and Robert Germano, by their attorneys, Rabner,

Allcorn, Baumgart & Ben-Asher, P.C. and Liddle & Robinson, L.L.P., for their Complaint

allege as follows:

## THE NATURE OF THE ACTION

1.      This is an action brought on behalf of two former Portfolio Managers for discrimination in violation of the Sarbanes-Oxley Act of 2002, 18 U.S.C § 1514A, et seq. ("Sarbanes-Oxley"), for retaliation in violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. ("CEPA"), and for damages for common law defamation of character by libel

## THE PARTIES

2.      Plaintiff Robert Waas was employed by Defendant Prudential Investment Management, Inc. ("PIM") in Newark, New Jersey as a Managing Director with responsibilities as a senior Portfolio Manager with investment authority over fixed income municipal bond mutual funds from February 2000 until November 16, 2004. Waas resides at 69 Bellvale Road in Mountain Lakes, New Jersey

3      Plaintiff Robert Germano was employed by Defendant PIM in Newark, New Jersey as a Vice President with responsibilities as a senior Portfolio Manager with investment authority over fixed income municipal bond mutual funds from March 25, 2002 until June 6, 2005   Germano resides at 432 Tennent Road in Morganville, New Jersey.

4.      Defendant Prudential Financial, Inc ("PF") is a publicly traded company organized and existing under the laws of the State of New Jersey with its principal place of business located at 751 Broad Street, Newark, New Jersey. PF is a financial services institution operating asset management and investment advisory businesses through its wholly owned subsidiary PIM in New Jersey and throughout the United States.

5. Defendant, Prudential Investment Management, Inc. is, upon information and belief, a corporation organized and existing under the laws of New Jersey, the primary fixed income asset management business of PF and a wholly owned subsidiary of PF with its principal place of business located at 2 Gateway Center, McCarter Highway & Market Street, Newark, New Jersey. PIM is an asset manager and investment advisor to the JennisonDryden Mutual Funds, a proprietary mutual fund family of PF.

6. Defendant, Prudential Investment Management Services LLC ("PIM Services"), is a wholly owned subsidiary of PF, an NASD registered broker-dealer, a distributor of mutual funds and related investment products and the broker-dealer through which Waas and Germano maintained their securities licenses with the National Association of Securities Dealers while they were employed by PIM. PIM Services' principal place of business is located at Three Gateway Center, 14th Floor, Newark, New Jersey.

## JURISDICTION

7. This Court has jurisdiction over the Sarbanes-Oxley claims pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law CEPA and common law defamation claims pursuant to 28 U.S.C. § 1367(a).

8. Each plaintiff has exhausted the administrative remedies available to them under Sarbanes-Oxley in that the plaintiffs filed Complaints with the United States Department of Labor under Sarbanes-Oxley in accordance with 18 U.S.C. 1514A(b)(1)(A), on or about February 8, 2005 and July 1, 2005 and the Secretary of Labor has not issued a final decision within 180 days of the filing of the Complaints.

## VENUE

9.     Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b) because the events giving rise to plaintiffs' claims occurred within the District of New Jersey

## FACTS

10.    Waas began employment with PIM in February 2000.  In his position as a senior Portfolio Manager, Waas was responsible for managing several municipal bond funds of the JennisonDryden Municipal Series Funds (the "Funds").

11.    The municipal bond funds under management within the JennisonDryden Municipal Funds were the National Fund, Florida Series, New York Series, New Jersey Series, Insured Series, High Income Series, California Series, California Income Series and Pennsylvania Series.

12     Over the next two years, PIM promoted Waas from Vice President to Principal, and then from Principal to Managing Director, and in 2001 PIM promoted Waas to Head of PIM's Municipal Bond Department.

13.    As Head of PIM's Municipal Bond Department, Waas supervised other Portfolio Managers while continuing to manage some of the Funds. Waas's responsibilities included quarterly reporting to the Board of Trustees of the JennisonDryden Mutual Funds on various topics, including, inter alia, the performance of the Funds.

14. For each of the years 2002 and 2003, Waas earned approximately $250,000 in base salary and $550,000 in cash bonus compensation and deferred compensation for a total of approximately $800,000 each year.

15. On or about March 25, 2002, PIM hired Germano as a senior Portfolio Manager within the municipal bond department, reporting to Waas.

16. Within a short period of time, as a result of changes in personnel in the Municipal Bond Department, Waas and Germano were responsible between themselves for managing all of the Funds.

17. During the years 2002 and 2003, Waas and Germano performed their duties in a professional and competent manner and consistently received favorable reviews of their performance.

18. Each of the Funds, according to their 2004 Prospectuses, provided for an Investment Objective and Principal Strategy of either "maximizing current [tax exempt] income" or "maximizing the amount of income" that is eligible for exclusion from income taxes. The Prospectuses of each of the Funds also require that the Investment Objectives, as fundamental policies of the Funds, may not be changed without approval of the Fund's shareholders.

19. Contrary to the Investment Objectives of the Funds, on or about April 1, 2004, PIM's senior management directed Waas and Germano to adopt a new "mandate" with regard to management of the investments in the Funds.

20. The new mandate required that Waas and Germano manage the investments to a new objective referred to as total rate of return. The goal was to beat the

5

appropriate Lehman Brothers Municipal Bond Index by a predetermined number of basis points depending upon the fund

        21.     Waas and Germano began to implement the changes requested of them with regard to managing the investments in the Funds.

        22.     Shortly thereafter, Waas and Germano realized that the new mandate violated the Investment Objectives of the Funds contained in the Prospectuses.

        23.     The new mandate was adopted by Glen Baptist, the Director of Marketing of PIM, and other senior executives at PIM, as part of a larger strategy to market the Funds to institutional investors rather than the current investors of the Funds who were typically "retail" (individual) investors living on a fixed income using the earnings of these Funds for a steady stream of (mostly) tax-free income.

        24.     The new mandate violated the Investment Objectives of the Funds by blending the Funds' primary goal of maximizing income with the secondary goal of price appreciation.

        25.     Because investment choices which result in price appreciation are subject to a capital gains tax, price appreciation as an investment strategy does not "maximize current income" in a tax exempt municipal bond fund, as required by the Investment Objectives of the Funds.

        26.     PIM also violated fundamental policies of the Funds by failing to notify the Board of Trustees of the Funds and the shareholders of the Funds and by failing to obtain shareholder approval prior to directing Waas and Germano to adopt the new mandate that in effect changed the Investment Objectives of the Funds.

27. Waas and Germano reasonably believed that the new mandate resulted in a violation of the anti-fraud and full disclosure requirements of federal securities laws, rules and regulations which prohibit the making of an untrue statement of material fact and the omission of facts necessary to prevent statements from being materially misleading, in accordance with Investment Company Act of 1940, 15 U.S.C. §80a et seq.

28. In or about late April 2004, Waas and Germano verbally notified PIM and PF that they reasonably believed the change in mandate resulted in a change in the Investment Objectives of the Funds in violation of federal securities laws, rules and regulations.

29. Subsequently, on or about April 25, 2004, Waas notified PIM and PF in writing that he and Germano reasonably believed that the new mandate constituted a change in the Investment Objectives of the Funds in violation of fundamental policies of the Prospectuses and federal securities laws, rules and regulations governing each of the Funds.

30. On or about June 3, 2004, Waas received an e-mail from Maureen Baker Fialcowitz, an attorney within PIM's and, upon information and belief, PF's Public Equity and Fixed Income Law Department, confirming receipt of Waas's and Germano's written complaint, and stating that the company was investigating the matter.

31. On June 22, 2004, Waas notified PIM that he, as manager of the Municipal Bond Department, could not approve that portion of the Annual Report relating to municipal bonds because, among other things, he reasonably believed that the report contained either untrue statements of material fact and/or omitted facts necessary

7

to prevent statements in the report from being materially misleading in connection with the change in the Investment Objectives of the Funds and the failure to disclose to shareholders the change in the Investment Objectives of the Funds which constituted a violation of federal securities laws, rules and regulations.

32.     Despite Waas' objections, PIM proceeded with completing and distributing the Annual Report without making any additional changes to the language of the report.

33.     On or about July 13, 2004, Waas and Germano were informed by letter from Cahill Gordon & Reindel, outside counsel to defendants, that the investigation was complete, and that a secret report prepared by the law firm Wilmer Cutler Pickering Hale and Dorr ("Wilmer Cutler"), ostensibly as a neutral and impartial arbiter of the facts, had concluded that "the shift in investment strategy that was implemented was not a change in investment objectives."

34.     In the same communication, Waas and Germano were threatened that if they refused to act as directed and as if the Wilmer Cutler report was final and accurate, or refused to engage in transactions they thought were in violation of the Prospectuses, PIM would deem that they were "resigning" their employment, implying that they were voluntarily leaving their jobs.

35.     Waas and Germano responded through counsel on July 23, 2004 that they were not resigning their employment, that they intended to continue to perform their duties in accordance with the stated Investment Objectives of the Prospectuses, and that they requested an opportunity to review the secret Wilmer Cutler report in order to

understand the information contained therein. PIM, however, refused to make a copy of the Wilmer Cutler report available to Waas and Germano for their review.

36.     Over the next several months, Waas and Germano continued to request an opportunity to review the Wilmer Cutler report. Their requests were repeatedly ignored or denied.

37.     At the same time, senior executives of PIM engaged in conduct designed to isolate, embarrass and harass Waas and Germano into resigning their employment with PIM.

38.     During July and August 2004, counsel for PIM and counsel for Waas and Germano exchanged a series of correspondence. The correspondence focused on, among other things, PIM's attempts to force Waas and Germano to resign their employment, which they had repeatedly declined to do.

39.     On or about August 31, 2004, in an attempt to fabricate a justification for terminating Waas's employment, PIM discriminated and retaliated against Waas by presenting him with the first negative performance review of his employment with PIM.

40.     On October 22, 2006, Waas notified PIM that he could not sign off on an Annual Report because he had not been provided access to the Wilmer Cutler report and he reasonably believed that the Annual Report contained either untrue statements of material fact and/or omitted facts necessary to prevent statements in the Annual Report from being materially misleading in connection with the change in the Investment Objectives of the Funds and the failure to disclose to shareholders the change

in the Investment Objectives of the Funds which constituted a violation of federal securities laws, rules and regulations.

41. In early November, Waas was asked by members of the Board of Trustees of the Funds to appear before them at the Board's meeting scheduled to take place on November 17, 2004.

42. On November 8, 2004, PIM allowed Waas and Germano to see the Wilmer Cutler report for the first time.

43. Waas and Germano were allowed to review the approximately fifteen-page report for only a half-hour. They were not allowed to retain copies, nor take notes and they were not permitted to see the report a second time.

44. Upon reviewing the Wilmer Cutler report, Waas and Germano reasonably believed that the Wilmer Cutler report failed to properly address significant aspects of their stated concerns.

45. Waas and Germano notified PIM that they believed that the Wilmer Cutler report did not address significant aspects of their stated concerns and therefore did not fully answer the question as to whether the change in mandate resulted in a violation of federal securities laws, rules and regulations.

46. On November 16, 2004, one day before the meeting of the Board of Trustees, James Sullivan, PIM's Chief Executive Officer, demanded a meeting with Waas. Sullivan told Waas that he needed to know before the Board of Trustees meeting the following day whether he was "on board" with the Wilmer Cutler report, and he needed a response to his question by 4:00 p.m. that day.

47.     When 4:00 p m. arrived, Waas told Sullivan that he reasonably believed that the Wilmer Cutler report did not address a critical aspect of whether a change in Investment Objective had occurred  Furthermore, Waas also informed Sullivan that the Wilmer Cutler report appeared to address only whether a change in a single risk characteristic (the average duration of the bonds until maturity) resulted in a violation of the Funds' stated Investment Objectives and it appeared that it did not address the impact on the Investment Objectives if there were changes made to additional risk characteristics under their management.

48.     Sullivan terminated Waas' employment immediately thereafter; which conduct constituted discrimination and retaliation by PIM and PF.

49.     On December 13, 2004, PIM discriminated and retaliated against Waas again by filing with the National Association of Securities Dealers, Inc  (the NASD), through its affiliate PIM Services, a Form U5 Uniform Termination Notice for Securities Industry Registration ("Form U5") which stated a false and defamatory explanation of PIM's decision to terminate Waas' employment  The Form U5 stated the following explanation for why Waas' employment was terminated:

> Following [Waas's] assertion that he would be unable to certify annual shareholder reports for the municipal bond funds that he managed. Waas contended that his refusal was based on his view -- not shared by Prudential's outside counsel -- that the Company had improperly changed the investment objectives for the applicable funds' prospectuses "

50.     The statement contained in the Form U5 was false because PIM's decision to terminate Waas' employment did not occur as a result of Waas's inability to certify the annual shareholder report  It occurred over three weeks later on

November 16, 2004 in order to prevent Waas from appearing before and presenting his views to the Board of Trustees of the Funds.

51. After the termination of Waas' employment, PIM repeatedly discriminated and retaliated against Germano in an attempt to force him to resign his employment.

52. PIM diminished Germano's duties by transferring portions of his responsibilities to junior Portfolio Managers, and by removing other aspects of his responsibilities in a manner designed to embarrass him and undermine his business relationships, specifically by leaving it to third parties to inform him that he would no longer be covering a particular account. This treatment by PIM undermined business relationships that Germano had spent a career cultivating.

53. PIM retaliated and discriminated against Germano and attempted to force him to resign his employment by cutting him off from many of the resources he needed to perform his job, including receipt of daily copies of the information he relied on to analyze the municipal bond market.

54. PIM diminished Germano's job duties and attempted to force him to resign his employment by assigning him to perform certain tasks typically performed by junior Portfolio Managers who were first learning how to manage a portfolio.

55. PIM retaliated and discriminated against Germano by not even affording him an opportunity to interview for Waas's role as Head of the Municipal Bond Department.

56.     By letter dated June 6, 2005, Germano notified PIM that his employment with PIM was ending on the grounds that PIM deliberately and intentionally made his working conditions so oppressive and intolerable that he no longer could continue and that he viewed his employment with PIM as having been involuntarily terminated.

### FIRST COUNT
(Discrimination By PIM and PF Against
Waas Under Sarbanes-Oxley)

57.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 56 as if separately set forth herein.

58.     PF is a publicly traded company subject to Sarbanes-Oxley, 18 U.S.C. § 1514A(a).

59.     As a wholly owned subsidiary of PF, PIM is also subject Sarbanes Oxley, 18 U.S.C. § 1514A(a).

60.     Waas was an "employee" of PIM protected by Sarbanes-Oxley, 18 U.S.C. § 1514A(a)

61.     Waas engaged in activity protected by Sarbanes-Oxley by, among other things, reporting to persons with supervisory authority, including Glenn Baptist and James Sullivan, (a) his reasonable belief that PIM's change in mandate violated the Investment Objectives of the Funds and could not be done without modifying the stated Investment Objectives after notifying the Funds' Board of Trustees and obtaining shareholder approval, and therefore violated securities laws and regulations intended to prevent fraud against shareholders, and (b) his reasonable belief that the Wilmer Cutler report did not adequately address certain material aspects of plaintiffs'

concerns, and therefore did not eliminate his concern that securities laws, rules and regulations intended to prevent fraud against shareholders were being violated.

62. PIM knew that Waas engaged in protected activity, as evidenced by, among other things, PIM's acknowledging receipt on or about June 3, 2004 of Waas's and Germano's written complaint, oral conversations between the plaintiffs and senior executives of PIM including Glen Baptist and Sullivan and the face-to-face confrontation between Waas and Sullivan on November 16, 2004, the date of termination of the Waas' employment.

63. Waas was subjected to threats, harassment and discrimination, including the involuntary termination of his employment on November 16, 2004 and the placement of negative language on his Form U5 on December 13, 2004.

64. Waas's protected activity was a contributing factor in PIM's adverse employment actions, which constituted discrimination against Waas in violation of Sarbanes-Oxley, 18 U.S.C. § 1514A.

65. As a result of PIM's and PF's discriminatory conduct, Waas has suffered substantial damages, including but not limited to lost wages and benefits in the form of back pay, reinstatement or front pay in lieu of reinstatement, interest, attorneys' fees and costs, and special damages, all in amounts to be determined at trial.

### SECOND COUNT
(Discrimination By PIM and PF Against
Germano Under Sarbanes-Oxley)

66. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 65 as if separately set forth herein.

14

67. PF is a publicly traded company subject to coverage by Sarbanes-Oxley, 18 U.S.C. § 1514A(a).

68. As a wholly owned subsidiary of PF, PIM is also subject to coverage by Sarbanes Oxley, 18 U.S.C. § 1514A(a).

69. Germano was an "employee" of PIM subject to protection by Sarbanes-Oxley, 18 U.S.C. § 1514A(a).

70. Germano engaged in activity protected by Sarbanes-Oxley by, among other thing, reporting to persons with supervisory authority, including Glenn Baptist (a) his reasonable belief that PIM's change in mandate violated the Investment Objectives of the Funds, and (b) his reasonable belief that the Wilmer Cutler report did not adequately address certain material aspects of plaintiffs' concerns, and therefore did not eliminate his concern that securities laws, rules and regulations intended to prevent fraud against shareholders were being violated.

71. PIM knew that Germano engaged in protected activity by among other things acknowledging receipt on or about June 3, 2004 of Waas' and Germano's written complaint and through oral conversations between the plaintiffs and senior executives of PIM.

72. Germano was subjected to threats, harassment and discrimination, including the involuntary termination of his employment on June 6, 2005.

73. Germano's protected activity was a contributing factor in PIM's adverse employment actions, which constituted discrimination against Germano in violation of Sarbanes-Oxley, 18 U.S.C. § 1514A.

74      As a result of defendants' discriminatory conduct, Germano has suffered substantial damages, including but not limited to lost wages and benefits in the form of back pay, reinstatement or front pay in lieu of reinstatement, interest, attorneys' fees and costs, and special damages, all in amounts to be determined at trial.

## THIRD COUNT
### (Retaliation By PIM
### Against Waas under CEPA)

75.      Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 74 as if separately set forth herein.

76.      Waas was an "employee" of PIM protected by CEPA. N.J.S.A. § 34:19-2(b).

77.      PIM was an "employer" subject to CEPA. N.J.S.A. § 34:19-2(a).

78.      Waas engaged in activity protected by CEPA by, among other things, notifying PIM that changes in the mandate for managing investments in the Funds violated the Investment Objectives of the Funds and by notifying PIM that the Wilmer Cutler report did not address certain material aspects of plaintiffs' complaints. Waas disclosed, objected to and/or refused to participate in PIM's said activity, policy or practice.

79.      Waas reasonably believed that the new mandate resulted in a violation of the anti-fraud and full disclosure requirements of the securities laws and rules which prohibited, among other things, the making of untrue statements and the omission of facts necessary to avoid making materially misleading statements in accordance with the Investment Company Act of 1940, 15 U.S.C. §80a et seq.

80. Waas was subjected to retaliation including the involuntary termination of his employment on November 16, 2004 and the placement of negative language on his Form U5 on December 13, 2004.

81. PIM engaged in the foregoing adverse employment actions against Waas in violation of CEPA, N.J.S.A. 34:19-3, because Waas objected to and/or refused to participate in PIM's activity, policy or practice which he reasonably believed constituted illegal and fraudulent conduct.

82. As a result of PIM's willful and malicious retaliatory conduct, Waas suffered substantial damages, including but not limited to lost wages and benefits and other remuneration, reinstatement or front pay in lieu of reinstatement, compensatory damages for humiliation, mental anguish and other pain and suffering, interest, attorneys' fees and costs, and punitive damages, all in amounts to be determined at trial.

FOURTH COUNT
(Retaliation By PIM Against
Germano under CEPA)

83. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 82 as if separately set forth herein.

84. Germano was an "employee" of PIM protected by CEPA. N.J.S.A. § 34:19-2(b)

85. PIM was an "employer" subject to CEPA. N.J.S.A. § 34:19-2(a)

86. Germano engaged in activity protected by CEPA by among other things notifying PIM that changes in the mandate for managing investments in the Funds violated the Investment Objectives of the Funds. Germano disclosed, objected to and/or refused to participate in PIM's said activity, policy or practice.

17

87      Germano reasonably believed that the new mandate resulted in a violation of the anti-fraud and full disclosure requirements of the securities laws and rules which prohibited among other things the making of untrue statements and the omission of facts necessary to avoid making materially misleading statements in accordance with the Investment Company Act of 1940, 15 U.S.C. §80a et seq.

88.     Germano was subjected to retaliation including the involuntary termination of his employment under circumstances whereby PIM deliberately and intentionally made Germano's working conditions so oppressive and intolerable that Germano could no longer work for PIM.

89.     PIM engaged in these adverse employment actions against Germano in violation of CEPA, N.J.S.A. 34:19-3 because Germano objected to what he reasonably believed was PIM's illegal and fraudulent conduct.

90.     As a result of PIM's willful and malicious retaliatory conduct Germano suffered substantial damages including but not limited to lost wages and benefits and other remuneration, reinstatement or front pay in lieu of reinstatement, compensatory damages for humiliation, mental anguish and other pain and suffering, interest, attorneys' fees and costs, punitive damages, all in amounts to be determined at trial.

### FIFTH COUNT
(Waas's Defamation Claim Against PIM Services)

91      Waas repeats and realleges the allegations set forth in paragraphs 1 through 90 as if separately set forth herein.

92    On or about December 13, 2004, PIM Services published

Waas's Form U5 which PIM Services knew contained false statements of fact concerning

Waas

93.    The Form U5 stated the following "explanation" for why

Waas's employment was terminated:

> Following [Waas's] assertion that he would be unable to
> certify annual shareholder reports for the municipal bond
> funds that he managed. Waas contended that his refusal was
> based on his view -- not shared by Prudential's outside
> counsel -- that the Company had improperly changed the
> investment objectives for the applicable funds' prospectuses.

94.    The statement contained in the Form U5 was false because

PIM's decision to terminate Waas' employment did not occur as a result of Waas's

inability to certify the annual shareholder report. It occurred over three weeks later on

November 16, 2004 in order to prevent Waas from appearing before and presenting his

views to the Board of Trustees of the Funds.

95.    The publication of these false statements adversely affects

Waas's reputation in his business, trade or profession by implying that Waas engaged in

improper conduct and imputing to Waas an inability to properly perform his duties and

responsibilities.

96.    PIM's statements constitute defamation per se in that they injure

Waas in his trade, business or profession.

97.    By reason of the foregoing, PIM Services is liable to Waas for

compensatory damages, in an amount to be determined at trial, plus prejudgment interest.

98.    PIM Services' conduct reflects a malicious and reckless disregard for the rights of Waas justifying an award of punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.    On the First Count by Waas against Defendants PIM and PF under Sarbanes-Oxley, compensatory damages including back pay, reinstatement or front pay in lieu of reinstatement, special damages including expungment of Waas' Form U-5, pre-judgment interest, attorneys' fees and costs, in amounts to be determined at trial;

B.    On the Second Count by Germano against Defendants PIM and PF under Sarbanes-Oxley, compensatory damages including back pay, reinstatement or front pay in lieu of reinstatement, special damages, pre-judgment interest, attorneys' fees and costs, in amounts to be determined at trial;

C.    On the Third Count by Waas against PIM under CEPA, back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages, pain and suffering damages, expungement of Waas' Form U5, punitive damages, pre-judgment interest, attorneys' fees and costs, in amounts to be determined at trial;

D.    On the Fourth Count by Germano against PIM under CEPA, back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages, pain and suffering damages, punitive damages, pre-judgment interest, attorneys' fees and costs, in amounts to be determined at trial;

E.    On the Fifth Count by Waas against PIM Services for defamation, compensatory damages, expungement of Waas' Form U5, punitive damages, and prejudgment interest, in amounts to be determined at trial;

F.     Such other and further relief as the Court deems just and proper

Dated:     New York, New York
           April 11, 2007

                    RABNER, ALLCORN,
                    BAUMGART & BEN-ASHER, P.C.


                    By: _____
                    David H. Ben-Asher (DB3242)
                    Attorneys for Plaintiff
                    52 Upper Montclair Plaza
                    Upper Montclair, New Jersey 07043
                    (973) 744-4000
                    Dben-asher@rabnerallcorn.com


                    LIDDLE & ROBINSON, L.L.P.
                    Marc A. Susswein, Esq. (MS9084)
                    800 Third Avenue
                    New York, New York  10022
                    (212) 687-8500


                    Attorneys for Plaintiffs,
                    Robert Waas and Robert Germano